**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Case No. 08-20012** |
| | ) |
| **ALVIN MARTIN and TAFF** | ) |
| **VIRDEN,** | ) |
| | ) |
| **Defendants.** | ) |

---

## MEMORANDUM AND ORDER

A jury convicted Defendants Alvin Martin and Taff Virden on Count 1 of the

Indictment returned in this case.  The matters currently before the court are Mr. Martin's

"Motion for Waiver Judgment of Acquittal" (Doc. 115),[1] "Motion for New Trial" (Doc.

116), and Mr. Virden's "Motion for New Trial" (Doc. 126).  As discussed more fully

herein, the court denies the defendants' requested relief.  In short, because the court

concludes the evidence at issue is not material, the court denies the defendants' request

for a new trial.

---

[1]While Mr. Martin filed both a Motion for Judgment of Acquittal (Doc. 115) and a Motion for New Trial (Doc. 116), he only filed a Memorandum in Support of his Motion for New Trial.  As Mr. Martin has provided the court with no further argument or authority as to why he is entitled to a judgment of acquittal and "'taking the evidence–both direct and circumstantial, together with the reasonable inferences to be drawn therefrom–in the light most favorable to the government, the jury could [have found Mr. Martin] guilty beyond a reasonable doubt,'" the court denies his Motion for Judgment of Acquittal.  *United States v. Erickson*, 561 F.3d 1150, 1158 (10th Cir. 2009) (quoting *United States v. Hanzlicek*, 187 F.3d 1228, 1239 (10th Cir. 1999)).

## FACTUAL AND PROCEDURAL  BACKGROUND

On February 1, 2008, an Indictment was filed as to Mr. Martin, John T. Stanley, and Mr. Virden.  In Count 1, the Indictment alleged that beginning in or about July, 2004 and continuing until on or about December 1, 2005, in the District of Kansas and elsewhere, the defendants, Mr. Martin, Mr. Stanley, and Mr. Virden, knowingly and willfully conspired and agreed with each other and with other persons, known and unknown, to commit and to conceal an offense against the United States; that is: to commit the crime of interstate transportation of stolen goods in violation of Title 18, United States Code, Section 2314; all in violation of Title 18, United States Code, Section 371.  In Count 2, the Indictment alleged that on or about November 8, 2005, in the District of Kansas and elsewhere, the defendants aiding and abetting each other and other persons, with unlawful and fraudulent intent did transport and cause to be transported in interstate commerce from the State of Kansas to the State of Arkansas and the State of Mississippi approximately four pallets of foodstuffs valued at $5,000 or more, knowing that the merchandise had been stolen from the Tyson Foods Inc. warehouse located in Olathe, Kansas; all in violation of Title 18, United States Code, Sections 2314 and 2.[2]

On February 4, 2008, Osie B. Cobbs was charged by information with the same offenses.  Mr. Cobbs was granted pretrial release at his arraignment on March 5, 2008,

---

[2] On May 8, 2009, Mr. Stanley pleaded guilty to a superseding information, and as a result, only Mr. Martin and Mr. Virden proceeded to trial.

and among the conditions of his release, he was required to refrain from the use or the unlawful possession of narcotic drugs and to submit to any method of testing as required to determine whether he was using drugs. On March 24, 2008, Mr. Cobbs pleaded guilty to Count 1 of the Information.[3]

On October 3, 2008, Mr. Cobbs tested positive for the use of cocaine.  In a report dated November 3, 2008, the probation officer assigned to Mr. Cobbs notified the judge to whom his case was assigned, Mr. Cobbs and the government by written Memorandum of Mr. Cobbs's positive drug test.  Mr. Cobbs's probation officer recommended that no action be taken at that time because of Mr. Cobbs's willingness to remain drug free.  On November 25, 2008, the court entered an Order Modifying the Conditions of Release for Mr. Cobbs.  This order directed him to "participate in a program of inpatient or outpatient substance abuse therapy and counseling if deemed advisable by the pretrial services office or supervising officer."

On April 14, 2009, in preparation for trial, the government disclosed to counsel for Mr. Martin and Mr. Virden a 1998 misdemeanor conviction of Mr. Cobbs.  On May 7, 2009, Mr. Martin and Mr. Virden proceeded to trial.  The government called Mr. Cobbs as one of its witnesses, and he testified about the conspiracy, including the roles played by him, Mr. Martin and Mr. Virden in the conspiracy.  On May, 14, 2009, the jury found Mr. Martin and Mr. Virden guilty on Count 1, but acquitted them on Count

---

[3] The case against Mr. Cobbs was at all times assigned to a different judge than the undersigned.

2.

On May 18, 2009, Mr. Cobbs's probation officer notified the government by telephone that Mr. Cobbs had tested positive for cocaine on May 4, 2009, and explained that a written report of the violation would be forthcoming.  On May 20, 2009, Mr. Martin filed a motion for judgment of acquittal and a motion for new trial, which are now before the court (Doc. 115 and 116).  On June 2, 2009, Mr. Virden filed a motion for a new trial (Doc. 126), which is also before the court.

Also on June 2, 2009, the government received the promised written Memorandum concerning Mr. Cobbs's positive drug test on May 4, 2009, and the government immediately disclosed this report to the defendants' counsel through email. On June 3, 2009, the court held a telephone conference with the parties, and at that time, granted the defendants an extension of time to file briefs in support of their motions.

On July 16, 2009, Mr. Virden and Mr. Martin each filed a Memorandum in Support of his Motion for New Trial (Docs. 139 & 140), alleging that the newly discovered evidence of Mr. Cobbs's cocaine use in May 2009 constituted a violation of the rule announced in *Brady v. Maryland*, 373 U.S. 83 (1963), which requires the government to disclose material exculpatory evidence to a defendant for use at trial.  On July 17, 2009, the government, for the first time, disclosed to counsel for the defendants Mr. Cobbs's positive drug screen from October 3, 2008.  In response to this disclosure, on August 3, 2009, Mr. Martin filed a Supplemental Memorandum of Law in Support of Motion for New Trial (Doc. 144), which alleged that the failure of the government to

4

disclose Mr. Cobbs's drug use in October 2008 constituted an additional violation of the *Brady* doctrine which required his motion for a new trial be granted.  On August 4, 2009, Mr. Virden filed a motion to join Mr. Martin's supplemental memorandum (Doc. 145), which this court granted (Doc. 146).

## STANDARD

The defendants move for a new trial.  Federal Rule of Criminal Procedure 33 provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33.  "A motion for a new trial is not regarded with favor and is only issued with great caution."  *United States v. Herrera*, 481 F.3d 1266, 1269-70 (10th Cir. 2007) (citing *United States v. Trujillo*, 136 F.3d 1388, 1394 (10th Cir. 1998)).  The decision whether to grant a motion for new trial is committed to the sound discretion of the trial court.  *United States v. Stevens*, 978 F.2d 565, 570 (10th Cir. 1992).

## DISCUSSION

In order to establish a *Brady* violation, a defendant must demonstrate that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defendant, and (3) the evidence was material.  *United States v. Combs*, 267 F.3d 1167, 1172 (10th Cir. 2001) (citing *United States v. Quintanilla*, 193 F.3d 1139, 1146 (10th Cir. 1999)).  The government argues that the defendants are not entitled to a new trial both because the government did not suppress the evidence of Mr. Cobbs's drug use and because the evidence was not material because it amounted to merely cumulative impeachment.  *See* Government's Response to Defendants' Motion for New Trial, Doc. 147, at 5-6.  The

5

court agrees that the evidence was not material, and as a result, denies both defendants'

motions for a new trial.

## 1. Suppression of Evidence

The government concedes that evidence of Mr. Cobbs's drug use in October 2008

and May 2009 constituted impeachment evidence and was subject to disclosure under

*Brady*.  However, the government argues that the evidence of his drug use in October

2008 was not suppressed by the government as it was readily discoverable by the

defendants and argues that evidence of his drug use in May 2009 was not subject to

disclosure under *Brady* because the information was not possessed by the government

or any of the investigative agencies working with the government on the prosecution of

the case prior to the conclusion of the trial.

In contrast, the defendants argue with respect to the positive drug screen in

October 2008 that part one of a *Brady* claim–whether the government suppressed

evidence–is clearly satisfied because the information was in the government's file prior

to the trial.  *See* Supplemental Memorandum of Law in Support of Motion for New Trial,

Doc. 144, at 4.  With respect to the positive drug screen in May 2009, the defendants

argue that the Tenth Circuit in *Combs* endorsed a broad application of *Brady* that would

include Pretrial Services as a branch of government so closely aligned with the

prosecution that the government should have a duty to seek information from Pretrial

Services and disclose any information in its possession.  *See* Mr. Virden's Memorandum

in Support of Motion for New Trial, Doc. 139, at 5-6; Mr. Martin's Memorandum of

Law in Support of Motion for New Trial, Doc. 140, at 2-3.

In *Combs*, the Tenth Circuit did not directly answer the question of whether Pretrial Services is covered by *Brady* as the Tenth Circuit decided the evidence at issue was not material.  *See Combs*, 267 F.3d at 1175.  While not directly answering the question, the Tenth Circuit did point out that the cases that suggest Pretrial Services is not covered by *Brady* largely predate the statutory requirement of 18 U.S.C. § 3154(5), which requires Pretrial Services to disclose any violation of pretrial release conditions to the United States attorney, and then concluded given this change in statutory requirements *Brady* was more likely to cover Pretrial Services.  *Id.*  Therefore, it would appear likely that the Tenth Circuit would conclude the government did have an obligation to seek information from Pretrial Services about Mr. Cobbs prior to trial.

Nonetheless, even if the Tenth Circuit did not find Pretrial Services is an agency covered by *Brady*, the court cannot agree with the government's argument that it did not suppress the October 2008 drug test.  The government argues it did not suppress this information because the defendants' attorneys could have inferred from the docket sheet in Mr. Cobbs's case and the changes in Mr. Cobbs's pretrial release conditions that he had likely tested positive for drugs.  The government asserts that because this information is publicly available, and therefore, was discoverable by the defendants' counsel, the government did not suppress the evidence at issue.  However, the government was fully aware of Mr. Cobbs's October 2008 positive test and had this information in its case files.  Consequently, at the very least, when discussing Mr.

7

Cobbs's drug use with the defendants' counsel, the government had an obligation to disclose Mr. Cobbs's positive drug test from October 2008.

## 2. Favorable Evidence

The second part of *Brady* "requires proof the evidence in question was exculpatory, or favorable, to the defendant." *Smith v. Secretary of N.M. Dep't of Corrections*, 50 F.3d 801, 825 (10th Cir. 1995). Impeachment evidence, such as the evidence of Mr. Cobbs's cocaine use, satisfies this standard. *Id.* at 825-26. The government concedes and the court agrees that evidence of Mr. Cobbs's drug use is evidence that is favorable to the defense, and therefore, the second part of the *Brady* claim is satisfied.

## 3. Material Evidence

The third part of a *Brady* claim "requires proof that the evidence was 'material either to guilt or to punishment.'" *Combs*, 267 F.3d at 1175 (citing *Smith*, 50 F.3d at 826). "'A fair analysis of the holding in *Brady* indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial.'" *Smith*, 50 F.3d at 826 (quoting *United States v. Agurs*, 427 U.S. 97, 104 (1976)). Evidence is therefore material "'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.'" *United States v. Hughes*, 33 F.3d 1248, 1251 (10th Cir. 1994) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

In this case, the court is convinced that there is no reasonable probability that the impeachment evidence of Mr. Cobbs's cocaine use would have affected the outcome of the trial. The fact that Mr. Cobbs tested positive for cocaine use two times over a one-year period three to four years after the conspiracy was concluded does not undermine confidence in the outcome of the case. Notably, the jury was aware of Mr. Cobbs's drug use during the conspiracy because he was questioned about it by both the government and counsel for Mr. Virden. Mr. Cobbs described his cocaine use as "recreational" and "on and off"–"not on a continuous basis." He also explained that he spent about $250 a month on cocaine, and when asked whether his cocaine use affected his family finances, Mr. Cobbs denied that Mr. Virden ever had to send him money due to his drug use. The additional information that Mr. Cobbs tested positive for cocaine in October 2008 and May 2009 is not inconsistent with his testimony that he occasionally used cocaine. Such evidence, while supportive of the idea that Mr. Cobbs did in fact use cocaine, is cumulative of the impeachment evidence already presented to the jury during the trial. Therefore, even if this additional evidence of drug use by Mr. Cobbs had been disclosed to the defense, the court does not believe it is reasonably probable that it would have resulted in a different outcome for the defendants.

In addition, the government, even without Mr. Cobbs's testimony, presented sufficient evidence to prove the defendants' guilt on Count 1 beyond a reasonable doubt. As to Mr. Martin, Eric Johnson, another co-conspirator, testified at trial that Mr. Martin approached Mr. Cobbs and Mr. Johnson to expand the amount of product they were

stealing from Tyson.  Mr. Johnson testified that in the beginning Mr. Cobbs simply asked Mr. Martin to take some product to Mr. Cobbs's family in Arkansas, and in return, they gave Mr. Martin some product of his own.  According to Mr. Johnson, after Mr. Martin had delivered product to Mr. Cobbs's family for a while, Mr. Martin approached Mr. Cobbs and Mr. Johnson and asked that they expand the amount of product they were illicitly placing on his trailer because he had contacts to whom he could sell the product. When Mr. Martin would transport and then sell this product, he would split the money he made with the other conspirators including Mr. Cobbs and Mr. Johnson.  The government presented other evidence that corroborated Mr. Johnson's testimony.  This evidence included the testimony of Chris Ford, the plant manager at the Tyson facility in Olathe, the testimony of Brian Boeding, one of the Tyson "Que Managers" during the time-frame of the conspiracy, and documents showing the money transfers and extensive communication between Mr. Martin and the other co-conspirators.

As to Mr. Virden, Mr. Johnson testified that Mr. Virden wanted some of the stolen product to sell to other people, that Mr. Martin delivered some of the product to Mr. Virden, and that Mr. Virden split the money with other members of the conspiracy. Additionally, Mr. Ford testified that Tyson experienced unusually high losses during the months the criminal conduct was occurring, thus negating the argument that the product provided to Mr. Virden was a small amount or was routinely as part of an employee sale. The government also admitted evidence at trial showing that Mr. Virden had transferred money to Mr. Martin.  Other exhibits at trial showed a very high number of phone calls

between the co-conspirators, and specifically over one thousand phone calls between Mr. Martin and Mr. Virden.

In light of the evidence presented at trial, the court agrees that the evidence of Mr. Cobbs's cocaine use several years after the conclusion of the conspiracy would not have produced a different result in this case. Therefore, the defendants have failed to establish the materiality that *Brady* requires. As a result, the court denies their motions for new trials.

## 4.   Newly Discovered Evidence

Mr. Virden also argues that he is entitled to a new trial, even if the Court rejects his *Brady* argument, because the evidence of Mr. Cobb's drug use is newly discovered evidence. "A defendant may win a new trial based on newly discovered evidence only if he shows that: (1) the evidence was discovered after trial; (2) the failure to discover the evidence was not caused by the defendant's lack of diligence; (3) the new evidence is not merely impeaching; (4) the new evidence is material to the principal issues in involved; and (5) the new evidence would probably produce an acquittal in a new trial." *United States v. Pearson*, 203 F.3d 1243, 1247 (10th Cir. 2000). Given the above analysis, Mr. Virden cannot satisfy the materiality requirement of this test or the requirement that the evidence would probably produce an acquittal at a new trial.

**IT IS THEREFORE ORDERED BY THE COURT** that Mr. Martin's "Motion for Waiver Judgment of Acquittal" (Doc. 115), "Motion for New Trial" (Doc. 116), and Mr.

Virden's "Motion for New Trial" (Doc. 126) are **DENIED**.


IT IS SO ORDERED, this 9th day of September, 2009, in Kansas City, Kansas.


s/ John W. Lungstrum
John W. Lungstrum
United States District Judge